IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BARRY GLAZER,                          *

    Plaintiff,                     *

v.                                     *          Civil Action No. GLR-25-1560

META PLATFORMS, INC., et al.,          *

    Defendants.                    *

***

## <u>MEMORANDUM OPINION</u>

THIS MATTER is before the Court on Defendant Meta Platforms, Inc.'s ("Meta")[1] Motion to Dismiss (ECF No. 16). The Motion is ripe for disposition, and no hearing is necessary. <u>See</u> Local Rule 105.6 (D.Md. 2025). For the reasons set forth below, the Court will grant the Motion.

## I.    BACKGROUND[2]

Plaintiff Barry R. Glazer is an eighty-year-old attorney, "a longtime coin collector[,] and [a] frequent online shopper." (Am. Compl. ¶ 10, ECF No. 20). He is a user of Facebook, a social media platform owned and operated by Meta, and "at all relevant times" he was bound by Meta's Terms of Service ("TOS") regarding the use of Facebook. (<u>Id.</u> ¶ 21).

---

[1] Glazer filed this action against Meta and Facebook, Inc. (Compl. ¶ 7, ECF No. 1). According to Meta, however, "Facebook, Inc." was renamed to "Meta Platforms, Inc." in 2021, and "'Facebook, Inc.' no longer exists." (Def.'s Mot. Dismiss ["Mot."] at 1 n.1, ECF No. 16).

[2] Unless otherwise noted, the Court takes the following facts from the Amended Complaint (ECF No. 20) and accepts them as true. <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).

Meta's TOS include a provision explaining that Meta monitors Facebook to detect and potentially address harmful content:

> We employ dedicated teams around the world, work with external service providers, partners and other relevant entities and develop advanced technical systems to detect potential misuse of our Products, harmful conduct towards others, and situations where we may be able to help support or protect our community, including to respond to user reports of potentially violating content. If we learn of content or conduct like this, we may take appropriate action based on our assessment that may include – notifying you, offering help, removing content, removing or restricting access to certain features, disabling an account or contacting law enforcement.

(Id. ¶ 21 n.1; Decl. Allison M. Schultz Support Def.'s Mot. Dismiss Ex. 1 ["Schultz Decl. Ex."] at 23, ECF No. 16-3).[3] The TOS also contain a provision that limits Meta's liability for the content and conduct of its users:

> We do not control or direct what people and others do or say, and we are not responsible for their actions or conduct (whether online or offline) or any content they share (including offensive, inappropriate, obscene, unlawful, and other objectionable content).

(Schultz Decl. Ex. at 30–31).

In May 2025, Glazer discovered a listing on Facebook Marketplace that advertised twenty U.S. Morgan silver dollar coins for sale for $70. (Am. Compl. ¶ 11). Glazer believed the price was "implausibly low," but he was "misled by the presentation of the listing" and ultimately bought the coins. (Id. ¶ 13). After receiving the coins, he had them examined by a professional and learned that they were counterfeit. (Id. ¶ 14). Glazer then began

---

[3] Unless otherwise noted, citations to page numbers refer to the pagination assigned by the Court's Case Management/Electronic Files ("CM/ECF") system.

investigating other advertisements on Facebook Marketplace[4] showing similar coins for sale. (Id. ¶ 16). He found advertisements in which the prices for the coins were "so absurdly low that they could not reasonably represent authentic items." (Id. ¶ 17). He also directed a "woman in her sixties to perform an identical search for gold coins," but the fraudulent advertisements that Glazer had found did not populate. (Id. ¶ 24).

Based on this independent research, Glazer concluded that these advertisements "target[ed] financially unsophisticated, less-educated, or otherwise vulnerable consumers, and were so facially deceptive that any reasonable platform with appropriate oversight would have flagged or removed them." (Id. ¶ 19). Glazer alleges that Meta breached its TOS by failing to remove the fraudulent advertisements, (id. ¶¶ 20, 56–58), and that Meta's advertising platform discriminates against people in violation of the Age Discrimination Act of 1975 ("ADA"), 42 U.S.C. §§ 6101, et seq., (id. ¶ 25).

Glazer filed an initial class action Complaint on May 14, 2025.[5] (ECF No. 1). In his Complaint, he alleged common law fraud or deceit (Count I); negligent misrepresentation (Count II); negligence (Count III); unjust enrichment (Count IV); violation of the Racketeer Influenced and Corrupt Organizations Act (the "RICO Act"), 18 U.S.C. §§ 1961–1968, (Count V); and breach of contract (Count VI). (Compl. at 4–7, ECF No. 1). Meta filed the instant Motion to Dismiss on July 31, 2025. (ECF No. 16). Glazer filed an

---

[4] Glazer asserts that he found more fraudulent advertisements on Facebook Marketplace, (Am. Compl. ¶¶ 16–17, 23–24), but the advertisements he refers to appear to originate from a different website called "Winter holiday," (Schultz Decl. Ex. at 3–19).

[5] Glazer states that he brings this action on behalf of "[a]ll individuals in the United States who, within the last four years, purchased counterfeit or fraudulent products through advertisements published on Facebook Marketplace." (Compl. ¶ 22; Am. Compl. ¶ 26).

Amended Complaint on August 1, 2025, asserting the same six Counts, (Am. Compl. ¶¶ 31–58), and adding a specific provision from Meta's TOS and an argument regarding the ADA, (id. ¶¶ 21 n.1, 24–25). He filed an Opposition the same day. (ECF No. 21). On August 20, 2025, this Court granted Meta's consent motion to treat its Motion to Dismiss as a motion opposing the Amended Complaint. (ECF No. 23). Meta then filed a Reply on August 29, 2025. (ECF No. 26).

## II.    DISCUSSION

### A.    <u>Standard of Review</u>

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>King v. Rubenstein</u>, 825 F.3d 206, 214 (4th Cir. 2016) (quoting <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. <u>Goss v. Bank of Am.,</u>

N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, accept the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. See Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cnty., 407 F.3d 266, 268 (4th Cir. 2005). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters of Norfolk v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

**B.    Analysis**

Meta argues that the Court should dismiss the Amended Complaint because Section 230 of the Communications Decency Act of 1996 ("CDA"), 47 U.S.C. § 230, bars Glazer's claims, (Def.'s Mem. L. Supp. Mot. Dismiss ["Mot."], at 14, ECF No. 16-1), and because his claims fail on the merits, (id. at 21). This Court agrees.

**1.    Section 230 Immunity**

Section 230 of the CDA states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). It further provides that "[n]o cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section." Id. § 230(e)(3). Taken together, Section 230 grants immunity from liability to (1) interactive computer services (2) for speech posted on the

service by a third party (3) for claims that seek to treat the service as if it published the third party's speech. See Zeran v. Am. Online, Inc., 129 F.3d 327, 330 (4th Cir. 1997) ("[Section] 230 creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service."); Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 254 (4th Cir. 2009) (Section 230 "bar[s] state-law plaintiffs from holding interactive computer service providers legally responsible for information created and developed by third parties.").

To establish immunity under Section 230, a defendant must satisfy three elements: "(1) [t]he defendant is a provider or user of an interactive computer service; (2) the plaintiff's claims hold the defendant responsible as the publisher or speaker of any information; and (3) the relevant information was provided by another information content provider." M.P. ex rel. Pinckney v. Meta Platforms Inc., 127 F.4th 516, 524 (4th Cir. 2025) (quoting Henderson v. Source for Pub. Data, L.P., 53 F.4th 110, 119 (4th Cir. 2022)) (footnote omitted). Meta satisfies these requirements as to all Counts.

### a.    Element 1 – Interactive Computer Service Provider

As to the first element, the parties do not dispute that Meta is a provider of an interactive computer service. (See Mot. at 15; Def.'s Reply Supp. Mot. Dismiss ["Reply"] at 5, ECF No. 26; see generally Pl.'s Opp'n Def.'s Mot. Dismiss ["Opp'n"], ECF No. 21). Indeed, Glazer alleges that Meta "provide[s] a platform where users could interact with content and advertisements," (Am. Compl. ¶ 22), a statement that aligns with the definition of an interactive computer service under Section 230: "any information service, system, or access software provider that provides or enables computer access by multiple users to a

computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions," 47 U.S.C. § 230(f)(2); see also M.P., 127 F.4th at 524 (finding that Facebook (now Meta) "is a provider or user of an interactive computer service"); Klayman v. Zuckerberg, 753 F.3d 1354, 1357 (D.C.Cir. 2014) (same); Forrest v. Meta Platforms, Inc., 737 F.Supp.3d 808, 816–17 (N.D.Cal. 2024) (same). Thus, Meta satisfies the first element.

### b.    Element 2 – Basis of the Claims

As to the second element, Meta argues, and Glazer does not dispute, that Glazer's claims treat Meta as the publisher or speaker of other users' content. (See Mot. at 16–18; Reply at 5; see generally Opp'n). "[A] claim . . . treats the defendant 'as the publisher or speaker of any information' under § 230(c)(1) if the claim (1) bases the defendant's liability on the disseminating of information to third parties and (2) imposes liability based on the information's improper content." M.P., 127 F.4th at 524 (quoting Henderson, 53 F.4th at 123). In deciding whether a defendant satisfies this requirement, a court must "consider whether a plaintiff's allegations seek 'to hold a service provider liable for . . . deciding whether to publish, withdraw, postpone or alter content' provided by third parties." Id. at 524 (quoting Zeran, 129 F.3d at 330).

Here, Glazer alleges in Counts I–III that Meta is liable for "allow[ing] the publication" of the fraudulent advertisements (Count I – fraud), (Am. Compl. ¶ 32); for "permitting the publication of deceptive content without adequate vetting" (Count II – negligent misrepresentation), (id. ¶ 36); and for "failing to implement adequate safeguards against fraudulent" advertisements (Count III – negligence), (id. ¶ 39). Each of these claims

seeks to hold Meta responsible "for its exercise of a publisher's traditional editorial functions," namely, "deciding whether to publish, withdraw, postpone or alter content," which places Meta in the role of the third party who provided the fraudulent advertisements. Zeran, 129 F.3d at 330; see also id. at 328 (holding that Section 230 protected service provider from liability for delay in removing "defamatory messages" posted by third parties); M.P., 127 F.4th at 525 (holding that Section 230 barred plaintiff's strict products liability, negligence, and negligent infliction of emotional distress claims because they sought "to hold Facebook liable for disseminating 'improper content' on its website"). Meta, therefore, satisfies this requirement as to Counts I–III.

Glazer also alleges in Count IV (unjust enrichment) that Meta is liable for "receiv[ing] a benefit in the form of advertising revenue from" the publishers of the fraudulent advertisements. (Am. Compl. ¶ 41). Essentially, Glazer contends that Meta has benefited unjustly from the posting of, and failure to remove, the fraudulent advertisements. Like his fraud- and negligence-based claims (Counts I–III), this unjust enrichment claim "depends on the content provided by a third party," Hillman v. Amazon.com Servs. LLC, 785 F.Supp.3d 59, 67 (D.Md. 2025), as it is grounded in the dissemination of (and failure to remove) that content on Meta's website, see M.P., 127 F.4th at 524 (citations omitted). Thus, Meta satisfies this requirement as to Count IV.

In Count V, Glazer alleges that Meta violated the RICO Act by using "electronic communications and online platforms to disseminate false and misleading advertisements, (Am. Compl. ¶ 48), and by "permit[ting], facilitate[ing], and profit[ing] from the[] fraudulent schemes by accepting advertising revenue from bad actors and failing to prevent

or remove obviously deceptive content from the platform," (id. ¶ 50). Although Section 230 does not apply to violations of federal criminal statutes such as the RICO Act, see 47 U.S.C. § 230(e)(1), multiple courts have held that it does apply to civil suits that are based on criminal violations, see Jane Doe No. 1 v. Backpage.com, LLC, 817 F.3d 12, 23 (1st Cir. 2016) (citations omitted); Doe #1 v. Twitter, Inc., No. 22-15103, 2023 WL 3220912, at *2 (9th Cir. May 3, 2023) (citations omitted); Force v. Facebook, Inc., 934 F.3d 53, 72 (2d Cir. 2019) (citations omitted). Section 230, therefore, applies to this claim, and as in Counts I–V, Glazer seeks to hold Meta liable for the posting of the fraudulent advertisements, for failing to remove those advertisements, and for benefiting monetarily from the publishing of those advertisements. (See Am. Compl. ¶¶ 48, 50). His RICO claim, thus, depends on the dissemination of a third-party's content and treats Meta as the publisher of that content. See M.P., 127 F.4th at 524 (citations omitted).[6] Accordingly, Meta satisfies the second requirement as to Count V.

Finally, in Count VI, Glazer brings a breach of contract claim against Meta for failing to remove the fraudulent advertisements in accordance with its TOS and the implied covenant of good faith and fair dealing. (Am. Compl. ¶¶ 56–57). As Meta points out in its Motion to Dismiss, "[t]he Fourth Circuit has not addressed whether claims for breach of contract . . . are barred by the [CDA], even where the ultimate[] injury is based on content

---

[6] Moreover, as explained in Subsection III.2.e of this Memorandum Opinion, Glazer has failed to adequately plead a civil RICO claim, even in the absence of Section 230 protection. See Baldino's Lock & Key Serv., Inc. v. Google, Inc., 88 F.Supp.3d 543, 547 (E.D.Va.) (holding that Section 230 barred plaintiff's civil RICO claim because he failed to adequately plead that claim), aff'd, 624 F.App'x 81 (4th Cir. 2015).

created by third parties and published on the defendant's website." (Mot. at 18 (quoting Yue v. Miao, No. MGL-PJG-18-3467, 2019 WL 5872142, at *4 (D.S.C. June 27, 2019), report & recommendation adopted, No. MGL-18-3467, 2019 WL 6130473 (D.S.C. Nov. 19, 2019), aff'd, 852 F.App'x 748 (4th Cir. 2021))). Turning to other courts' decisions, however, Meta asserts that Section 230 bars contract claims such as this that are not grounded in "a specific promise or representation," (id. (quoting Doe v. Grindr Inc., 128 F.4th 1148, 1154 (9th Cir. 2025))), but instead rely on "the existence of a 'general monitoring policy,'" (id. at 20 (quoting Yue, 2019 WL 5872142, at *6)). This Court agrees.

The United States Court of Appeals for the Ninth Circuit first addressed this issue in Barnes v. Yahoo!, Inc., 570 F.3d 1096 (9th Cir. 2009). There, Barnes filed suit against Yahoo!, Inc. ("Yahoo") for breach of contract, among other claims, for Yahoo's failure to remove "indecent profiles" from its website. Id. at 1099. The district court found that Section 230 protected Yahoo from these claims and dismissed Barnes's complaint. Id. The Ninth Circuit reversed as to the breach of contract claim, holding that because Barnes sought to hold Yahoo liable "as the counter-party to a contract"—the alleged affirmative promise to remove the profiles—and not as "a publisher or speaker of third-party content," Section 230 did not bar her breach of contract claim. Id. at 1107. Importantly, however, the court noted that to circumvent Section 230's protections, the alleged promise must be "clear and well defined," id. at 1108 (quoting 1 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 8.7 (4th ed. 2007)), and that "a general monitoring policy, or even an attempt to help a particular person, on the part of an interactive computer service . . . does not suffice for contract liability," id.

Unlike in <u>Barnes</u>, Glazer has failed to allege that Meta promised expressly to remove or otherwise address the fraudulent postings. He points to a provision in Meta's TOS in which Meta merely assures its users that it works to detect improper use of its websites and that it "<u>may</u> take appropriate action" if it learns of any such misuse. (Am. Compl. ¶ 21 n.1 (emphasis added)). Such language, however, constitutes a "general monitoring policy" and "does not suffice for contract liability." <u>Barnes</u>, 570 F.3d at 1108. Glazer does not highlight any other provision in the TOS as imposing a duty on Meta to remove content, nor does the Court find any such provision in the TOS. (<u>See</u> Schultz Decl. Ex. 21–33). In fact, Meta warns in its TOS that it is not responsible for the content or actions of its users. (<u>Id.</u> at 30–31). Thus, absent an affirmative promise from Meta to remove the fraudulent posts, Glazer's breach of contract claim, as to both a breach of an express provision and a breach of the implied covenant of good faith and fair dealing, is grounded in the dissemination of improper content. <u>See</u> <u>M.P.</u>, 127 F.4th at 524; <u>Fed. Agency of News LLC v. Facebook, Inc.</u>, 432 F.Supp.3d 1107, 1119–20 (N.D.Cal. 2020) (finding that plaintiff's claims of breach of implied covenant of good faith and fair dealing were "predicated on Facebook's decision to remove content" and thus were barred by Section 230). Meta, therefore, satisfies this element as to Count VI, as well.

### c.    Element 3 – Third-Party Information Content Provider

As to the third and final element, the content and conduct at issue here—posting ads for counterfeit coins—is that of third parties. <u>See</u> <u>M.P.</u>, 127 F.4th at 524 (citations omitted). Indeed, Glazer appears to acknowledge that third parties (or "scam sellers," (Am. Compl. ¶ 41)) provided the fraudulent information—the Facebook Marketplace listing that Glazer

acted upon, (id. ¶¶ 11–13), and other ads for collectible coins posted on a separate website, (id. ¶¶ 17–18; Schultz Decl. Ex. at 8–18)—and seeks to hold Meta liable, not for providing that content, but for allowing third parties to do so, (see Am. Compl. ¶¶ 28, 32, 34, 36, 38 (alleging that Meta "allowed the publication of" fraudulent advertisements, "permit[ed] the publication of deceptive content," breached its duty to "review[] and approv[e] advertisements," etc.)).

Glazer argues, however, that Meta "help[ed] to develop" the allegedly unlawful content by requiring users to input their age, gender, and location to register for a Facebook account, thus allowing advertisers to target certain individuals. (Am. Compl. ¶¶ 24–25; Opp'n at 3–6). He cites to Fair Housing Council of San Fernando Valley v. Roommates.Com, LLC, 521 F.3d 1157 (9th Cir. 2008), for support. (See Opp'n at 3–6). There, the plaintiffs sued Roommates.com, LLC ("Roommate"), "a website designed to match people renting out spare rooms with people looking for a place to live," id. at 1161, for alleged violations of the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3601, et seq., and similar state laws, id. at 1162. They argued that Roommate violated the FHA by requiring users to disclose their sex, sexual orientation, and whether they have children living with them as part of the registration process, id. at 1161, because doing so "'indicate[d]' an intent to discriminate against them" and required subscribers to express a "'preference, limitation, or discrimination'" as to potential housemates, id. at 1164–65 (quoting 42 U.S.C. § 3604(c)). The district court found that Section 230 protected Roommate from liability. Id. at 1162. The Ninth Circuit reversed, id. at 1176, concluding that while the users were the ones indicating allegedly discriminatory preferences, "Roommate's own

acts—posting the questionnaire and requiring answers to it—" id. at 1165, contributed materially to the alleged illegality of those preferences and the resulting profiles:

> Here, the part of the profile that is alleged to offend the Fair Housing Act and state housing discrimination laws—the information about sex, family status and sexual orientation—is provided by subscribers in response to Roommate's questions, which they cannot refuse to answer if they want to use defendant's services. By requiring subscribers to provide the information as a condition of accessing its service, and by providing a limited set of pre-populated answers, Roommate becomes much more than a passive transmitter of information provided by others; it becomes the developer, at least in part, of that information.

id. at 1166. Thus, Roommate constituted an "information content provider" of the allegedly unlawful content and, therefore, was not immune under Section 230. Id. at 1164; see also Vargas v. Facebook, Inc., No. 21-16499, 2023 WL 6784359, at *2–3 (9th Cir. Oct. 13, 2023), cert. denied, 144 S. Ct. 824 (2024) (holding that Section 230 did not bar plaintiff's FHA claim against Facebook because they "challeng[ed] Facebook's own actions," namely, using questionnaire and algorithms to determine users' characteristics and enable housing advertisers to target certain users who were seeking housing).

Here, Glazer has alleged that the advertisements at issue are fraudulent, (Am. Compl. ¶¶ 18–19), and that Meta is a developer of the fraudulent advertisements because it created a "discriminatory algorithm" that enabled scam sellers to target their advertisements at certain individuals, (id. ¶¶ 24–25; Opp'n at 3–6). A defendant, however, "will not be considered to have developed third-party content unless the defendant directly and 'materially' contributed to what made the content itself unlawful." Force, 934 F.3d at 68 (emphasis added) (quoting Fed. Trade Comm'n v. LeadClick Media, LLC, 838 F.3d

158, 174 (2d Cir. 2016)). Unlike in Roommates.Com, LLC, where Roommate's questionnaires "develope[d], at least in part," the allegedly discriminatory content on which the plaintiffs' based their discrimination claims, 521 F.3d at 1166, Glazer has not alleged that the advertisements here are discriminatory,[7] nor has he alleged sufficient facts that Meta, via its questionnaire and "discriminatory algorithm," contributed to the fraudulent nature of the advertisements. In other words, Glazer has failed to adequately allege that Meta "materially contributed to the piece(s) of information relevant to liability." Henderson, 53 F.4th at 128; see, e.g., Nemet, 591 F.3d at 257–58 (finding that defendant was not a content provider because plaintiff failed to allege that defendant "contributed to the allegedly fraudulent nature of the comments at issue"); Force, 943 F.3d at 70 (finding that Facebook was not the provider of the content at issue in part because "[m]erely arranging and displaying others' content to users of Facebook through . . . algorithms [based on identifying information that Facebook obtained from its users] . . . [was] not enough to hold Facebook responsible as the 'develop[er]' or 'creat[or]' of that content"). Meta, therefore, satisfies the final element for Section 230 immunity, and Glazer's claims against Meta are barred.

---

[7] Even if the Court were to construe Glazer's Amended Complaint as bringing a separate cause of action under the ADA, Glazer fails to state a claim upon which relief may be granted because he does not allege in the Amended Complaint that Meta "receiv[es] Federal financial assistance," a required element of an ADA claim, 42 U.S.C. § 6102. He raises this allegation in his Opposition, (see Opp'n at 6), but a plaintiff cannot raise allegations for the first time in an opposition to a motion to dismiss, see Menk v. MITRE Corp., 713 F.Supp.3d 113, 166 n.19 (D.Md. 2024) (citations omitted). Glazer also has not alleged that he has exhausted his administrative remedies as required under 42 U.S.C. §§ 6104(e)(2) and (f).

## 2.      Failure to State a Claim

Although Section 230 bars Glazer's claims against Meta, dismissal also is warranted under Rule 12(b)(6) because Glazer fails to state a claim upon which relief may be granted as to each Count in the Amended Complaint.

### a.      Count I – Common Law Fraud/Deceit

In Count I, Glazer alleges common law fraud or deceit. (Id. ¶¶ 31–34). To state a claim of common law fraud under California law,[8] a plaintiff must allege "(a) [a] misrepresentation . . . ; (b) knowledge of falsity . . . ; (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." Charnay v. Cobert, 51 Cal.Rptr.3d 471, 482 (Cal.Ct.App. 2006) (quoting Lazar v. Superior Ct., 909 P.2d 981, 984 (Cal. 1996)). Here, Glazer fails to allege sufficient facts demonstrating that Meta, as opposed to the coin sellers, knew about the fraudulent advertisements let alone intended to defraud him through those advertisements. He claims that "[t]he fraudulent nature of the[] advertisements was patently obvious to any reasonable reviewer, including [Meta]," and

---

[8] Meta's TOS specify that California law governs "any claim, cause of action, or dispute . . . that arises out of or relates to these Terms or [the user's] access or use of the Meta Products . . . ." (Schultz Decl. Ex. at 31). "When a contract contains a choice-of-law provision, Maryland courts generally apply the law of the chosen jurisdiction" unless that jurisdiction has "'no substantial relationship to the parties or the transaction' and . . . lacks some 'other reasonable basis' for having been chosen, or . . . the law of that jurisdiction would be contrary to the strong public policy of" the jurisdiction whose laws would otherwise apply. EnviroAnalytics Grp. LLC v. AXIS Surplus Ins. Co., 784 F.Supp.3d 821, 851 (D.Md. 2025) (quoting Jackson v. Pasadena Receivables, Inc., 921 A.2d 799, 803–04 (Md. 2007)), reconsideration denied, No. JKB-24-2970, 2025 WL 1837677 (D.Md. July 3, 2025). Glazer does not dispute that California bears a relationship to this action, as it is the home of Meta's headquarters. (See Am. Compl. ¶ 6; Mot. at 21 n.5). Finding no violation of Maryland public policy in doing so, the Court will apply California law in accordance with the TOS choice-of-law provision.

that Meta has "the technological and human capacity to review, flag, and vet ads through both automated and manual processes." (Am. Compl. ¶ 20). It is, however, "impossible for service providers to screen each of their millions of postings for possible problems." Zeran, 129 F.3d at 331. The fact that Meta "employ[s] dedicated teams" to detect harmful content, (Schultz Decl. Ex. at 23), does not mean that Meta did in fact find and detect the falsity of the fraudulent advertisements that Glazer takes issue with. As for Meta's intent, Glazer provides no more than a conclusory statement that Meta "intended that consumers, including [Glazer], rely on the false representations," (Am. Compl. ¶ 33), which is insufficient to survive a Rule 12(b)(6) motion to dismiss, see Iqbal, 556 U.S. at 678.

Glazer also fails to allege justifiable reliance. Indeed, he seems to allege the opposite in stating that "[t]he fraudulent advertisements were patently deceptive and bore common hallmarks of scams, including unrealistic pricing, poor grammar, absence of verifiable contact information, and claims of authenticity that were facially implausible." (Am. Compl. ¶ 2). Although justifiable reliance generally is a question of fact for the jury, it "may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts." All. Mortg. Co. v. Rothwell, 900 P.2d 601, 609 (Cal. 1995) (quoting (Guido v. Koopman, 2 Cal.Rptr.2d 437, 440 (Cal.Ct.App. 1991)). Given Glazer's alleged experience as a "longtime coin collector," (Am. Compl. ¶ 10), and his descriptions of the "facially deceptive" advertisements whose fraudulent nature was "patently obvious," (id. ¶¶ 19–20), this Court finds that he fails to allege justifiable reliance, see OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp., 68 Cal.Rptr.3d 828, 856 (Cal.Ct.App. 2007) (explaining that reliance is not justifiable or reasonable if the plaintiff

"put faith in representations that were 'preposterous' or 'shown by facts within his observation to be so patently and obviously false that he must have closed his eyes to avoid discovery of the truth'" (quoting Hartong v. Partake, Inc., 72 Cal.Rptr. 722, 737 (Cal.Ct.Capp. 1968)), as modified, (Dec. 26, 2007). Glazer, therefore, fails to state a claim of fraud.

### b.      Count II – Negligent Misrepresentation

In Count II, Glazer alleges negligent misrepresentation. (Am. Compl. ¶¶ 35–37). To state a claim of negligent misrepresentation under California law, a plaintiff must allege "(1) the misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." Nat'l Union Fire Ins. Co. of Pittsburgh v. Cambridge Integrated Servs. Grp., Inc., 89 Cal.Rptr.3d 473, 483 (Cal.Ct.App. 2009) (quoting Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC, 70 Cal.Rptr.3d 199, 213 (Cal. 2007)). "[T]he causal elements, particularly the allegations of reliance, must be specifically pleaded." Id. Here, as with his fraud claim, Glazer does not allege sufficient facts demonstrating either intent or justifiable reliance and, therefore, fails to state a claim of negligent misrepresentation.

### c.      Count III – Negligence

In Count III, Glazer alleges negligence. (Am. Compl. ¶¶ 38–40). To state a claim of negligence under California law, a plaintiff must allege that the "defendant had a duty to use due care, that [the defendant] breached that duty, and that the breach was the proximate or legal cause of the resulting injury." Brown v. USA Taekwondo, 483 P.3d 159, 164 (Cal.

2021) (quoting <u>Nally v. Grace Cmty. Church</u>, 763 P.2d 948, 956 (Cal. 1988)). Here, Glazer does not allege sufficient facts demonstrating that Meta owed him a duty of care. He alleges that Meta "owed a duty to exercise reasonable care in reviewing and approving advertisements on their platform." (Am. Compl. ¶ 38). As explained above, however, Meta's TOS contain no affirmative obligation to review and approve advertisements or listings on Facebook Marketplace other than a general monitoring policy. (<u>See</u> Schultz Decl. Ex. at 23). In fact, Meta's TOS state that Meta does "not control or direct what people and others do or say, and [Meta is] not responsible for their actions or conduct . . . or any content they share . . . ." (<u>Id.</u> at 30–31). Although a defendant may have a duty to protect a plaintiff from the actions of third parties when the defendant and plaintiff have a "special relationship" (<u>i.e.</u>, parent-child, common carrier-passenger, etc.), when the defendant created the risk of harm to the plaintiff, or when the defendant attempted to aid the plaintiff, <u>Brown</u>, 483 P.3d at 164–65 (citations omitted), Glazer has not alleged facts satisfying any of these requirements.

Furthermore, under the CDA, Meta has no legal duty to monitor users' content. "Courts have repeatedly held that under the [CDA], [i]nternet service providers do not owe a duty to police the Internet, remove content, or otherwise protect users from the speech of third parties." <u>Kabbaj v. Google, Inc.</u>, No. RGA-13-1522, 2014 WL 1369864, at *5 (D.Del. Apr. 7, 2014), <u>aff'd</u>, 592 F.App'x 74 (3d Cir. 2015). Imposing such a duty would risk discouraging internet service providers from regulating their sites or risk encouraging them to over-regulate their sites. <u>See</u> <u>Zeran</u>, 129 F.3d at 331 (citations omitted). Congress

recognized as much when it created the protections under Section 230. Id. (citations omitted). Glazer, thus, fails to state a claim of negligence.

### d.    Count IV – Unjust Enrichment

In Count IV, Glazer alleges unjust enrichment. (Am. Compl. ¶¶ 41–43). While there is no cause of action for "unjust enrichment" under California law, a plaintiff may bring a "quasi-contract" claim for restitution under a theory that "the retention of [a] benefit would unjustly enrich the recipient." City of Oakland v. Oakland Raiders, 299 Cal.Rptr.3d 463, 477–78 (Cal.Ct.App. 2022) (citations omitted) (quoting Munoz v. MacMillan, 124 Cal.Rptr.3d 664, 675 (Cal.Ct.App. 2011)). Such quasi-contract claims, however, "do[] not lie where the parties have an enforceable express contract." Durell v. Sharp Healthcare, 108 Cal.Rptr.3d 682, 699 (Cal.Ct.App. 2010); Klein v. Chevron U.S.A., Inc., 137 Cal.Rptr.3d 293, 330 (Cal.Ct.App. 2012) ("A plaintiff may not . . . pursue or recover on a quasi-contract claim if the parties have an enforceable agreement regarding a particular subject matter."), as modified on denial of reh'g (Feb. 24, 2012). A plaintiff may state both a breach of contract claim and a quasi-contract claim in one complaint; however, for the quasi-contract claim, the plaintiff "must plausibly allege the absence of any applicable and enforceable contract provisions, even if in the alternative." Copart, Inc. v. Sparta Consulting, Inc., 339 F.Supp.3d 959, 984 (E.D.Cal. 2018) (quoting Lennar Mare Island, LLC v. Steadfast Ins. Co., No. KJM-KJN-12-02182, 2016 WL 829210, at *4 (E.D.Cal. Mar. 3, 2016)); see also Klein, 137 Cal.Rptr.3d at 331–32.

Here, Glazer brings both a breach of contract and unjust enrichment claim against Meta. (Am. Compl. ¶¶ 41–43, 56–58). He concedes that he "agreed to [Meta's TOS]

governing the use of Facebook," (id. ¶ 21), and relies on the "contractual obligations imposed by the TOS between [him] and [Meta]" in his breach of contract claim, (id. ¶ 56). At no point does he allege that the TOS were unenforceable. Additionally, the TOS address the subject matter of Glazer's challenges, that is, whether Meta was obligated to review and remove fraudulent advertisements on Facebook Marketplace. (See Schulz Decl. Ex. at 23, 30–31). Specifically, the TOS provide that Meta may remove violating content if it becomes aware of such, (id. at 23), and that Meta cannot control and is not responsible for the conduct or content of others, (id. at 30–31). Because the TOS cover the subject matter of Glazer's claims, and Glazer does not allege that the TOS are unenforceable, Glazer's unjust enrichment theory is inapplicable. See Durell, 108 Cal.Rptr.3d at 699.

### e.    Count V – RICO Violation

In Count V, Glazer alleges violations of the RICO Act. (Am. Compl. ¶¶ 44–55). To state a civil claim under the RICO Act, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering." Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496 (1985) (footnote omitted). "To show a 'pattern of racketeering activity,' a plaintiff must 'adequately plead at least two predicate acts of racketeering activity.'" Balt. Flips Israel 2020 LLC v. Yosef, 769 F.Supp.3d 370, 404 (D.Md. 2025). The plaintiff also must show that "the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." United States v. Pinson, 860 F.3d 152, 161 (4th Cir. 2017) (quoting H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989)). When a plaintiff alleges mail and/or wire fraud as the predicate acts, those acts "must be pled with particularity, pursuant to Rule 9(b)" of the Federal Rules of Civil Procedure. Yosef, 769

F.Supp.3d at 404 (quoting <u>Proctor v. Metro. Money Store Corp.</u>, 645 F.Supp.2d 464, 473 (D.Md. 2009)). To plead either mail or wire fraud, the plaintiff must demonstrate "(1) defendant's knowing participation in a scheme to defraud; and (2) the mails or interstate wire facilities were used in the furtherance of the scheme . . . ." <u>Id.</u> (quoting <u>Proctor</u>, 645 F.Supp.2d at 473).

Here, Glazer claims Meta and its "co-conspirators" committed wire fraud by disseminating false advertisements for the sale of counterfeit U.S. Morgan silver dollar coins. (Am. Compl. ¶¶ 48, 52). As with his fraud claim, however, Glazer has not alleged sufficient facts showing that Meta knew about the fraudulent advertisements let alone "knowing[ly] participat[ed] in a scheme to defraud" Glazer, a required element of wire fraud. <u>Yosef</u>, 769 F.Supp.3d at 404 (quoting <u>Proctor</u>, 645 F.Supp.2d at 473). Additionally, other than the single advertisement that Glazer acted upon, the Amended Complaint contains no allegations of additional fraudulent advertisements on Facebook Marketplace or other Meta platforms. (<u>See generally</u> Am. Compl.). Glazer claims that he found additional such advertisements on Facebook Marketplace, (<u>id.</u> ¶¶ 16–18), but the attached exhibits to which he directs the Court show advertisements from websites that appear to be unrelated to Meta or Facebook, (<u>see</u> Schultz Decl. Ex. at 3–19). He, therefore, fails to allege sufficient facts demonstrating that the alleged predicate acts—which are not sufficiently pleaded—are related or "pose a threat of continued criminal activity." <u>Pinson</u>, 860 F.3d at 161 (quoting <u>H.J. Inc.</u>, 492 U.S. at 239). Accordingly, Glazer fails to state a civil claim under the RICO Act.

### f.    Count VI – Breach of Contract

Finally, in Count VI, Glazer alleges breach of contract. (Am. Compl. ¶¶ 56–58). To state a claim of breach of contract under California law, a plaintiff must allege: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." Oasis W. Realty, LLC v. Goldman, 250 P.3d 1115, 1121 (Cal. 2011). Here, there is no dispute that Meta's TOS constitute a contract between Meta and Glazer. (See Am. Compl. ¶ 21; Mot. at 33). Glazer, however, fails to allege sufficient facts demonstrating Meta's breach of any specific provision in the TOS. See Young v. Facebook, Inc., 790 F.Supp.2d 1110, 1117 (N.D.Cal. 2011) ("In an action for breach of a written contract, a plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached."). He cites to a provision in the TOS in which Meta states that it may remove harmful content if Meta learns of it, (Am. Compl. ¶ 21 n.1), but this provision does not, as Glazer suggests, obligate Meta to remove such content. Moreover, the TOS contain a provision in which Meta expressly disclaims responsibility for third parties' content on Facebook. (See Schultz Decl. Ex. at 31); see also Caraccioli v. Facebook, Inc., 700 F.App'x 588, 590 (9th Cir. 2017) (affirming dismissal of plaintiff's breach of contract claim because "Facebook's terms of service . . . expressly disclaim Facebook's responsibility for the content published by third parties").

Glazer's reliance on the implied covenant of good faith and fair dealing also is insufficient to sustain his breach of contract claim. (See Am. Compl. ¶ 57). "Under California law, '[e]very contract imposes on each party a duty of good faith and fair dealing

in each performance and in its enforcement.'" Lynch v. Matterport, Inc., No. C 22-03704 WHA, 2023 WL 5310558, at *4 (N.D.Cal. Aug. 16, 2023) (quoting Carson v. Mercury Ins. Co., 148 Cal.Rptr.3d 518, 534 (Cal.Ct.App. 2012)). "[T]he implied covenant imposes upon each party the obligation to do everything that the contract presupposes they will do to accomplish its purpose," but it "does not impose substantive terms and conditions beyond those to which the parties actually agreed." King v. Facebook, Inc., 572 F.Supp.3d 776, 787 (N.D.Cal. 2021) (first quoting Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 272 Cal.Rptr. 387, 398 (Cal.Ct.App. 1990), and then quoting Avidity Partners, LLC v. State of Cal., 165 Cal.Rptr.3d 299, 320 (Cal.Ct.App. 2013)). Here, Glazer avers that under the implied covenant of good faith and fair dealing, Meta had a duty to "take reasonable steps to ensure that users are protected from fraudulent and deceptive conduct occurring on its platform." (Am. Compl. ¶ 57). Meta's TOS, however, did not create an express obligation to remove fraudulent content, (Schultz Decl. Ex. at 23), and the implied covenant cannot insert such an obligation into the TOS, see King, 572 F.Supp.3d at 787 (citations omitted). Glazer, therefore, fails to state a breach of contract claim.

### III.    CONCLUSION

For the foregoing reasons, the Court will grant Meta's Motion to Dismiss (ECF No. 16) as to all Counts in the Amended Complaint.[9] A separate Order follows.

Entered this 17th day of October, 2025.

_____/s/_____
George L. Russell, III
Chief United States District Judge

---

[9] Because Section 230 provides Meta immunity from Glazer's claims, amending of the Complaint "would be futile," and dismissal will be with prejudice. Cozzarelli v. Inspire Pharms. Inc., 549 F.3d 618, 630 (4th Cir. 2008); see also McDonald v. LG Elecs. USA, Inc., 219 F.Supp.3d 533, 540 n.6 (D.Md. 2016) (dismissing with prejudice plaintiff's negligent failure to warn claim because Section 230 barred that claim).